UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MELVIN JAMES MARSHALL,

        Petitioner,

v.

RANDEE REWERTS,

        Respondent.

Case No. 1:18-cv-778

Honorable Janet T. Neff

_____/

## **OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

## Discussion

I. Factual allegations

Petitioner Melvin James Marshall is incarcerated with the Michigan Department of Corrections at the Carson City Correctional Facility (DRF) in Carson City, Michigan. Following a jury trial in the Kent County Circuit Court, Petitioner was convicted of two counts of armed robbery, Mich. Comp. Laws § 750.529; one count of felon in possession of a firearm, Mich. Comp. Laws § 750.224f; and one count of felony firearm, Mich. Comp. Laws § 750.227b. The Michigan Court of Appeals described the facts underlying Petitioner's convictions as follows:

> On August 1, 2011, Grace Eyk-Lang and Stephen Plachta were approached in the parking lot of their apartment building by defendant and two other individuals (Eric Scott, and Deontae Woodhouse) who exited a tan Chevy Malibu. Scott held a handgun to Plachta's head and demanded money. Plachta said that he had none, and either the man with the gun, or one of his two companions, reached into Plachta's pockets, took his wallet and cellular telephone, and handed these items off to the third group member. Scott then pointed the gun at Eyk-Lang, and she handed over her purse. Defendant and the other two men left the apartment parking lot. Plachta observed the Malibu's license place. The license plate number was provided to police who found that the Malibu was registered to defendant at 1025 Lilac Court. The officers subsequently observed the tan Chevy Malibu parked in the back yard of that home with its dome light still illuminated. Shortly thereafter, officers using a public address system commanded the occupants of the house to come out. Within 10 to 15 minutes, Woodhouse and a child exited the house via the front door, and Scott was apprehended outside the rear of the house after breaking a window. Defendant, however, refused to exit the house for approximately one hour despite repeated commands to surrender.
>
> After he eventually surrendered, defendant consented to a search of the home, and Eyk-Lang and Plachta's property was found in different places throughout the home. Plachta and Eyk-Lang each expressed complete confidence that Scott was one of the men who robbed them. They were less certain about the other two. Eyk-Lang testified, however, that she saw defendant driving the Malibu. Scott indicated that he, defendant, and Woodhouse, had mutually planned to commit the robbery and share in any proceeds. While Scott pointed the gun at Plachta during the robbery, defendant drove the men to the robbery in his Malibu, and ultimately took control of the gun after the robbery was complete.

*People v. Marshall*, No. 308654, 2013 WL 2420971, at *1 (Mich. Ct. App. June 4, 2013).

Petitioner, with the assistance of counsel, appealed his convictions to the Michigan Court of Appeals. He raised two issues, the same issues he raises in his habeas petition: (1) the prosecutor impermissibly exercised a peremptory challenge to excuse a potential juror on the basis of race and Petitioner's trial counsel rendered constitutionally ineffective assistance for failing to object; and (2) the trial court incorrectly scored offense variables 12, 13 and 14.

The court of appeals refused to consider Petitioner's peremptory challenge argument because, the court concluded, it had been waived by Petitioner's failure to make a timely objection at trial. *Marshall*, 2013 WL 2420971, at *1. The court then considered whether counsel's failure to make a timely objection was ineffective assistance. The court concluded that the prosecutor, by way of a failed challenge for cause, had sufficiently articulated a race-neutral explanation for the juror's dismissal so that Petitioner's counsel's failure to object did not fall below an objective standard of reasonableness. *Id*. at *2.

The court of appeals also considered and rejected each of Petitioner's offense variable scoring challenges. *Id*. at *3-4.

Petitioner, again with the assistance of counsel, filed an application for leave to appeal in the Michigan Supreme Court raising the same issues he had raised in the court of appeals. The Michigan Supreme Court denied leave with respect to the peremptory challenge/ineffective assistance issue. *People v. Marshall*, 843 N.W.2d 925 (Mich. 2014). With regard to the sentence scoring issue, the Michigan Supreme Court, in lieu of granting leave to appeal, vacated the court of appeals decision and remanded to that court for reconsideration in light of *People v. Hardy*, 835 N.W.2d 340 (Mich. 2013), and *People v. Osantowski*, 748 N.W.2d 799 (Mich. 2008). *Marshall*, 843 N.W.2d at 925.

On remand, the court of appeals applied the standard of review urged by the Michigan Supreme Court. Nonetheless, the court of appeals reached the same result. *People v. Marshall*, No. 308654, 2014 WL 3887180 (Mich. Ct. App. Aug. 7, 2014). Petitioner again applied for leave to appeal in the Michigan Supreme Court.

The Michigan Supreme Court reversed the court of appeals' decision regarding the offense variable scoring; but only with respect to Offense Variable 13. *People v. Marshall*, 861 N.W.2d 47 (Mich. 2015). The supreme court remanded to the trial court for resentencing. *Id.*

On April 28, 2015, the trial court resentenced Petitioner to respective prison terms of 30 to 70 years on the armed robbery convictions, concurrent to 5 to 20 years on the felon-in-possession conviction, all consecutive to 5 years on the felony-firearm conviction.

Petitioner started the appeal process anew on his new judgment of conviction. This time Petitioner raised one issue in the Michigan Court of Appeals: Petitioner's sentence was unreasonable under *People v. Lockridge*, 870 N.W.2d 502 (2015). The Michigan Court of Appeals rejected Petitioner's challenge by opinion issued September 13, 2016. *People v. Marshall*, No. 327633, 2016 WL 4791833 (Mich. Ct. App. Sept. 13, 2016). Petitioner sought leave to appeal that decision in the Michigan Supreme Court. That court denied leave by order entered May 2, 2017. *People v. Marshall*, 894 N.W.2d 40 (Mich. 2017).

On July 16, 2018, Petitioner filed his habeas corpus petition. Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Petitioner signed his application on July 16, 2018. (Pet., ECF No. 1, PageID.6.) The petition was received by the Court on July 19, 2018. For purposes of this Report and Recommendation, I have given Petitioner the benefit of the earliest possible filing date. *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (holding

4

that the date the prisoner signs the document is deemed under Sixth Circuit law to be the date of handing to officials) (citing *Goins v. Saunders*, 206 F. App'x 497, 498 n.1 (6th Cir. 2006)).

The petition raises 2 grounds for relief,

I. Violation of *Batson v. Kentucky*, 476 U.S. 79, 89 (1986) and *Strickland v. Washington*, 466 U.S. 668, 690 (1984). Petitioner avers that hitherto the proceeding courts have erroneously reviewed and contemplated the two inextricably linked arguments advanced by facts of case within record which Petitioner contends are (1) contrary to people's argument the "specific race" of all jurors seated in instant case was/is available to compare with other venire members whom had similar "run-ins" with law enforcement yet, prosecution for reasons not clearly established failed to apply the same reasoning and criteria to a specific African-American potential juror and subsequently opted peremptory challenge predicated on potential African-American juror's inability to recall the particulars of a specific incident with law enforcement of which record show framed such juror as a matter of law to other Caucasian venire members whom prosecution passed over for peremptory challenge. Petitioner contends there is dispositive and persuasive evidence within the record that reflects purposeful discrimination and pretext with regard to peremptory ejection of African American juror, which violates Constitution of the United States. (2) In *Strickland v. Washington* the U.S. Supreme Court set forth specific criteria for determining whether a defendant was deprived of effective assistance of counsel under the 6th Amendment which encompassed acts or omissions that cannot be reasonable and objectively construed as strategic or tactical. In instant case, Petitioner maintains that counsel's performance fell below an objective standard of reasonableness and that the representation, as evinced through record that defendant was so prejudiced by counsel's deficient interpretation of what an objection on the record, as opposed to a non-objection when faced with the intricate methodology of voir dire as exhibited by an overzealous prosecutor who was most cognizant of the standard for review upon appeal by defendant when considered under plain error rule.

II. Petitioner at this juncture of the constitutional process is factually incredulous to trial court's and reviewing court's application of law to facts as represented within the record as to scoring of OV 13 (pattern) and OV 14 (leader) and statutory adherence by Michigan Court of Appeals and Michigan Supreme Court and entreats court to review all such rulings hitherto issue as final decisions pursuant to applicable standard of review and law.

(Pet., ECF No. 1, PageID.3-4 with minor alterations.) The Court construes the petition as raising every issue Petitioner raised in his appeals in state court.

## II. AEDPA Standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-382; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. \_\_\_, 134 S. Ct. 1697, 1705 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

III. *Batson*

In *Batson v. Kentucky*, 476 U.S. 79, 96, (1986), the Supreme Court articulated a three-step analysis to be applied to an Equal Protection Clause claim that purposeful discrimination occurred in the selection of the petit jury based solely on the prosecutor's exercise of his peremptory challenges at trial. *See United States v. Bartholomew*, 310 F.3d 912, 919

7

(6th Cir. 2002). First, the Defendant must establish a prima facie case of racial discrimination. *See United States v. Copeland*, 321 F.3d 582, 599 (6th Cir. 2003). This requires an initial showing that "the defendant . . . is a member of a cognizable racial group . . . and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race." *Batson*, 476 U.S. at 96 (citation omitted). "[T]he defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.'" *Id.* (quoting *Avery v. Georgia*, 345 U.S. 559, 562 (1953)). Ultimately, the defendant, relying on this presumption and other facts, must "raise an inference that the prosecutor used [the practice of peremptory challenges] to exclude the veniremen from the petit jury on account of their race." *Id.*

Second, once the defendant has raised the necessary inference, "the burden shifts to the state to come forward with a neutral explanation for challenging [potential] jurors." *Id.* at 97. "The government is not required to persuade the court that its reasons for dismissing the juror were well-founded; rather it need only demonstrate that its reasons were race-neutral." *Copeland*, 321 F.3d at 599. More specifically, "[t]he second step of this process does not demand an explanation that is persuasive or even plausible. 'At this . . . step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.'" *Purkett v. Elem*, 514 U.S. 765, 767-68 (1995) (quoting *Hernandez v. New York*, 500 U.S. 352, 360 (1991)).

Third, the party opposing the strike must demonstrate that the prosecutor's purported explanation is merely a pretext for racial motivation. *See McCurdy v. Montgomery County*, 240 F.3d 512, 521 (6th Cir. 2001) (describing *Batson* test). Ultimately, the court must determine "whether the defendant has carried his burden of proving purposeful discrimination."

8

*Hernandez*, 500 U.S. at 359. In making this determination, the Court presumes that the facially valid reasons proffered by the prosecution are true. *Id.* at 359-60. Racially discriminatory purpose or intent must be affirmatively shown by the opponent of the strike. *Id.* at 360. The ultimate burden of persuasion always remains with the opponent of the strike. *See United States v. McFerron*, 163 F.3d 952, 955 (6th Cir. 1998).

The Michigan Court of Appeals concluded that Petitioner failed to make a timely objection and, therefore, his *Batson* claim was waived. In Michigan, a *Batson* challenge is timely if it is made before the jury is sworn. *People v. Knight*, 701 N.W.2d 715, 729 (Mich. 2005). The State of Michigan is free to adopt a timeliness rule with regard to *Batson* objections. *See Ford v. Georgia*, 498 U.S. 411, 423 (1991) ("The appropriateness in general of looking to local rules for the law governing the timeliness of a constitutional claim is, of course, clear. In *Batson* itself, for example, we imposed no new procedural rules and declined either 'to formulate particular procedures to be followed upon a defendant's timely objection to a prosecutor's challenges,' or to decide when an objection must be made to be timely."). The Supreme Court has acknowledged that requiring a *Batson* objection before the jury is sworn "is a sensible rule." *Ford*, 498 U.S. at 422. The Michigan Court of Appeals applied that sensible rule and refused to consider Petitioner's *Batson* claim.

When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982). To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the state court enforced the rule so as to bar the claim; and (3) the state procedural default is an "independent

and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster v. Adams*, 324 F.3d 423, 436-37 (6th Cir. 2003); *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001).

Petitioner failed to comply with the Michigan rule that *Batson* objections must be made before the jury is sworn. There is no question that the court of appeals would not consider his *Batson* claim for that reason. Moreover, the rule in question serves as an independent and adequate state ground or decision. A state law procedural rule is adequate and independent when it was "firmly established and regularly followed" at the time of the asserted procedural default. *Rogers v. Howes*, 144 F.3d 990, 992 (6th Cir. 1998) (citing *Ford*, 498 U.S. at 423-24). Petitioner does not suggest that the rule was not regularly followed.

If a petitioner procedurally defaulted his federal claim in state court, the petitioner must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks*, 377 F.3d at 551-52. The miscarriage-of-justice exception only can be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence. *House*, 547 U.S. at 536. A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

Petitioner does not claim that he is actually innocent. Instead, he claims there was cause for his failure to comply with the rule: the ineffective assistance of Petitioner's trial counsel.

10

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. The petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

The Michigan Court of Appeals applied the *Strickland* standard when it decided Petitioner's ineffective assistance claim:

> To establish ineffective assistance of counsel, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *Strickland v. Wash*, 466 U.S. 668, 688, 694 (1984); *People v. Frazier*, 478 Mich. 231, 243; 733 NW2d 713 (2007). Effective assistance of counsel is presumed, and counsel's performance must be measured against an objective standard of reasonableness without the benefit of hindsight. *People v. Payne*, 285 Mich.App 181, 188, 190; 774 NW2d 714 (2009); *People v. Seals*, 285 Mich.App 1, 17; 776 NW2d 314 (2009).

*Marshall*, 2013 WL 2420971, at *2. The appellate court considered the requirements of *Batson* and reviewed the circumstances faced by counsel during voir dire:

> The Fourteenth Amendment forbids a party from removing a prospective juror solely on the basis of race. *Batson*, 476 U.S. at 89.
>
>> To establish a prima facie case of discrimination based on race, the opponent must show that: (1) he is a member of a cognizable racial group; (2) the proponent has exercised a peremptory challenge to exclude a member of a cognizable racial group; and (3) all the relevant circumstances raise an inference that the proponent of the challenge excluded the prospective juror on the basis of race. [*Knight*, 473 Mich. at 336.]
>
> If the trial court determines that a prima facie case of discrimination has been made, "the burden shifts to the proponent of the peremptory challenge to articulate a race-neutral explanation for the strike." *Id*. Such a reason does not have to be persuasive, or even plausible, only "facially valid as a matter of law." *Knight*, 473 at Mich. 337–338, citing *Purkett v. Elem*, 514 U.S. 765, 768 (1995), and quoting *Hernandez v. New York*, 500 U.S. 352, 360 (1991). "[I]f the proponent provides a race-neutral explanation as a matter of law, the trial court must then determine whether the race-neutral explanation is a pretext, and whether the opponent of the challenge has proved purposeful discrimination." *Id*.
>
> In this case, before making the peremptory challenge, the prosecutor had first challenged the juror at issue for cause. At that point, even assuming a prima facie showing, a race-neutral explanation for the juror's dismissal was articulated. In addition to another offense, the prosecutor had records showing that the juror had been arrested by the Grand Rapids police for theft, but the juror indicated that he could not remember whether he had been arrested. Because a race-neutral explanation was articulated, the analysis turns on whether the prosecutor's argument was mere pretext. Such an analysis presents a question of credibility.

> *See People v. Bell*, 473 Mich. 275, 283; 702 NW2d 128 (2005), mod 474 Mich. 1201 (2005) (citation omitted). Defendant appears to argue that discriminatory intent is shown because there were four venire members who had "run-ins" with the law, but only the one juror who was African–American was challenged, and this happened after the prosecutor had brought up the issue of race. "If a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at *Batson's* third step." *Miller–El v. Dretke*, 545 U.S. 231, 241 (2005). The race of the other venire members is not apparent in the record, but even if it were, defendant has failed to show that the juror at issue was similarly situated to the other three members with criminal histories. Unlike the others, the juror's history appeared to include more than one criminal violation, one of which (unlike those of the other jurors) was similar in kind to that charged in the instant case, and the juror claimed not to remember this additional incident. Defendant has not established that a *Batson* violation occurred, and as a result he has not shown that counsel's failure to raise the issue fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688, 694.

*Marshall*, 2013 WL 2420971, at *2.

The Michigan Court of Appeals relied on clearly established federal law in reaching its conclusions with regard to the *Batson* challenge and the *Strickland* analysis. Petitioner does not take issue with the authorities relied on by the state appellate court. Instead, he challenges the court's factual determination that the race of the other three jurors with criminal records was unavailable. Critically, for its *Batson* analysis, the state court assumed Petitioner would be able to show that the juror peremptorily excused was Petitioner's race and the other three jurors with criminal records were not. Yet, the state court still concluded that the record sufficed to show non-pretextual reasons for treating the excused juror differently. Specifically, the court concluded that the excused juror's additional criminal violation—a violation that was similar in nature to the charged crime—and the juror's inability to even remember his arrest for the incident, shifted the burden back to Petitioner. Petitioner offers no response. He simply relies on the racial difference that begins the analysis at the first *Batson* step. He offers nothing to overcome the reason proffered by the prosecutor. Under those circumstances, the state court concluded counsel acted reasonably when he decided to forego a *Batson* challenge. The court presented a reasonable argument that

13

counsel satisfied *Strickland's* deferential standard. That is all that is required to preclude habeas relief in light of this Court's doubly deferential standard of review. Put simply, Petitioner has failed to show that the Michigan Court of Appeals' rejection of his ineffective assistance claim is contrary to, or an unreasonable application of, either *Strickland* or *Batson*. Accordingly, he is not entitled to habeas relief.

IV. Sentence Scoring

"[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 131 S. Ct. 13, 16 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, Rules Governing Habeas Corpus Cases). The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 131 S. Ct. at 14; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Claims concerning the improper application of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief). Accordingly, Petitioner's incredulity with regard to the state courts' sentence scoring decisions does not warrant habeas relief.

Moreover, Petitioner's further claim that his sentences are unreasonable under *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015), does not raise a federal constitutional claim.

14

The United States Constitution does not require strict proportionality between a crime and its punishment. *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment." *Marks*, 209 F.3d at 583; *see also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (gross disproportionality principle applies only in the extraordinary case); *Ewing v. California*, 538 U.S. 11, 36 (2003) (principle applies only in "'the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality'") (quoting *Rummel v. Estelle*, 445 U.S. 263, 285 (1980)). A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)). Ordinarily, "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995). Petitioner was not sentenced to death or life in prison without the possibility of parole, and his sentence falls within the maximum penalty under state law. Petitioner's sentence does not present the extraordinary case that runs afoul of the Eighth Amendment's ban of cruel and unusual punishment.

Finally, a sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Roberts v. United States,* 445 U.S. 552, 556 (1980), *quoted in Koras v. Robinson,* 123 F. App'x 207, 213 (6th Cir. 2005); *see also United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948). To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence.

*Tucker*, 404 U.S. at 447; *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984); *Koras,* 123 F. App'x at 213 (quoting *United States v. Stevens,* 851 F.2d 140, 143 (6th Cir. 1988)). A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence. *Tucker*, 404 U.S. at 444, 447.

Although Petitioner contends the facts failed to establish that he was a leader, he does not identify any facts found by the court at sentencing that were based on false information. He therefore fails to demonstrate that his sentence violated due process. *Tucker*, 404 U.S. at 447; *United States v. Lanning*, 633 F.3d 469, 477 (6th Cir. 2011) (rejecting due process claim where the petitioner failed to point to specific inaccurate information relied upon by the court).

Petitioner has failed to demonstrate that the state court's determinations with regard to his sentences are contrary to, or an unreasonable application of, clearly established federal law. Accordingly, Petitioner is not entitled to habeas relief on his sentencing claims.

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of

Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

The Court will enter a Judgment and Order consistent with this Opinion.

Dated: August 28, 2018 /s/ Janet T. Neff
Janet T. Neff
United States District Judge